Next case is number 25-1808 Mellentine Coates v. Ford Motor Company. Next case is number 26-1818 Mellentine Coates v. Ford Motor Company. Next case is number 27-1818 Mellentine Coates v. Ford Motor Company. Next case is number 27-1818 Mellentine Coates v. Ford Motor Company. Next case is number 27-1818 Mellentine Coates v. Ford Motor Company. Next case is number 27-1818 Mellentine Coates v. Ford Motor Company. What's the evidence that this defect in the RCM, which you allege existed at the time of the sale? Yes, your honor. This is the original RCM. It's sealed. It's never been opened. It was inspected by the parties. They confirmed the circuitry. There has been no modification or alteration to this RCM. Okay, but this car, we're asking about the original condition. There was an accident in this car in 2015. Did the RCM and the airbag work properly back then? There was no airbag deployment back then. Okay, so there were repairs done after this accident. And if I may, your honor, the RCMs were also designed to function properly for five static deployments. There's no evidence that an airbag had ever deployed, nor was there a deployment threshold that had been met. There's no evidence of that. Why doesn't the fact that every day, every mile, someone drives this car over 14 years and the airbags don't deploy spontaneously work against the malfunction theory here? Why does the use of the car work against the malfunction theory? Yes, for 14 years. If something like this had occurred within the first month in 2002, I totally get it. 14 years later and 100,000 miles later, does the theory even make sense? Well, I believe there's probably over hundreds of thousands of cars on U.S. roads today that are 14 years or older and have an expectation that the working life of these RCMs still functions regardless of having 100,000 miles or 14 years of use. Except that the defect has to be there from the outset. Well, yes, your honor. And the way these RCMs function, they're not constantly discriminating for deployment events. When there's a deployment event, the threshold that had been met, it is supposed to deploy then and generate a recording. So anybody who's looking at the data can see what had occurred and had this RCM function properly. You're saying this maybe was the first time in the car's life when you had the circumstances such that the thing would deploy? Well, perhaps that's Ford's position that there may have been a collision that deployed it. We don't know what the cause of the deployment was because the data is lost. All right. But the story is it just spontaneously deployed in the middle of the road with no accident? Correct. And the data or lack of data would corroborate that. Right. And that's by Ford's own specifications. They require. And Ford has not addressed this requirement. They require that a recording be generated. What we have is a deployment, no recording, and requirements that on any deployment, a recording be generated. And we don't have that. So we know it malfunctioned in one at least function of this RCM. Ford should not be entitled. We know your RCM didn't work properly because there's no recording. Correct. Okay. But that doesn't show that the airbag deployed because of a defect, right? It's not enough to show what the RCM itself is defective, right? Well, the RCM did malfunction. And the two, while they're separate functions, the two functions are inextricably related. And that's by Ford's own rules. This is Ford's. So every time the RCM fails to record, the airbag spontaneously deploys? No, I believe you have that backwards, Your Honor. When there's a spontaneous deployment or when there is a deployment, there should be a recording. There must be a recording. There isn't. I understand that. I'm asking you to make the connection between the airbag deployment and the RCM recording because I'm positing a hypothetical. Isn't it possible that the RCM has some defect? It doesn't record. It's supposed to record, right? We agree on that. It's supposed to record. It didn't in this case. The only circumstance in which there would be a deployment and no recording, and there has been no refute of this, is when there's an electrical failure to the RCM where it would deploy first, the electrical source is cut off and it does not have time to record. So your argument is that because there's no recording, it proves that airbag spontaneously deployed? Because there is no recording, it is evidence that this airbag spontaneously deployed. Why? Because of the requirement by Ford's own requirements. Manuals and requirements exist, but that's not the way things always play out in the real world. You'd agree with that. That's the essence of your case is that this product didn't function as intended, correct? Correct. I would agree with that. So I'm not sure how the manual or the requirements help you. Well, I believe they corroborate the evidence plaintiff statement that this airbag spontaneously deployed. There's no evidence that she was driving erratically. There's no evidence to support any negligent driving that Ford has put forward. Right. We're trying to find out what's the evidence, what's the material dispute of fact that shows that when this thing came off the product line in 2002, that it was a defective product because of either a manufacturing defect or a design defect. Those are the two options on the table, correct? Correct. Okay. And one way to test the manufacturer design defect is to inspect the product. You'd agree with that? I would agree with that. And you had an expert, Dr. Caruso, who said he could have inspected the product, but he wasn't asked to do so, right? Correct, Your Honor. And I would say to that, inspecting, physically opening the RCM, that would not reproduce the data for us. The value in this RCM is the data it was required to generate. Opening it up and inspecting it would not reproduce that. That data's gone. Well, he said he could have pulled the RCM out to, quote, try to identify what was causing those historical fault codes. That was his testimony. That was, but it's not going to reproduce. At the end of the day, we have one party saying there was no commanded deployment, a spontaneous deployment, and Ford saying it was a commanded deployment. He also testified that the only way to determine that is if we had the data. If we had the data, we would all know how and why this airbag deployed, but we don't have that. And opening up the RCM, which was sealed in the original, there's no evidence that it had ever been tampered with, altered, or modified in any way, is not going to reproduce the data. Did Caruso say that? Did Caruso say, it would have been irrelevant for me to pull the RCM out because it's not going to tell me anything anyway? I thought he said the opposite of that, or at least implied the opposite of that. No, Your Honor. Perhaps he implied it, but it's not going to give the data. He also testified... When you say it's not going to give the data, you mean the RCM isn't going to give the data? No, Your Honor. I apologize. I mean, opening up and physically looking at the circuitry of the RCM is not going to reproduce the data that Mr. Caruso testified would inform us if there was a commanded deployment or if there was not a commanded deployment. Opening it up and looking at the circuitry wouldn't do that, but is there any kind of testing that would have revealed the data that you say would have been helpful? No, Your Honor. It doesn't exist? It doesn't exist. It was supposed to be recorded had the RCM functioned properly. We know that it did not function properly in at least the recording function, and FORGE should not be entitled to the inference that it functioned properly in function. You rely heavily on TUTIN, if I'm pronouncing that correctly? Yes, Your Honor. But in that case, the components were discarded by the mechanics in accordance with business practices. Here, the equipment was available. Why should we follow TUTIN here? Why isn't it important to keep the malfunction theory limited to cases where the product has either been lost or destroyed or is otherwise unavailable? Well, and I will start with the TUTIN court also stated that the Section 3 of the malfunction theory is applicable where plaintiffs also have a time pointing to the specific defect. But the lack of availability of the data recording in this RCM is a functional equivalent to being lost or destroyed. The circuitry in the actual physical module itself is not the value of the RCM. It's the data that it was required to record that informs both parties or anybody who reads that data of how this deployment occurred, when it occurred, if it was commanded to deploy or not, if the module sensed an impact and saved and deployed it in accordance with the specifications that Ford has put forth, which are the requirements of this RCM. Let's stipulate that the accident occurred as Ms. Coates said and also that a malfunction occurred because of a defect in the 14th year of this car. What reason would a jury have to find that the defect was present when the car came off the line? Because the RCM is the original RCM. Nothing's been altered. Both parties inspected the electrical systems, restraint systems, and found no issue with the wiring. But does the passage of time, I know that isn't relevant at all, in 100,000 miles. No, and I would believe that the case law says it is relevant. The passage of time is relevant. Yes. Yeah, because if this had come off the line and a week later the airbag deployed, you would be looking at a jury saying, this isn't supposed to happen. It's a new car. It just came off the line and a week later it deployed. So the passage of time has to be relevant. Right. I would agree, Your Honor. And I believe that's why a plaintiff is tasked with ruling out alternative causes, reasonable alternative causes. And the plaintiff has done this here. They've ruled out an electrical failure to the RCM to explain the lack of recording. Plaintiffs ruled out mechanical issues that may have caused a loss of control. All right. So just to make sure we understand your argument. As I hear it, you're saying 14 years isn't that meaningful. 100,000 miles isn't that meaningful. Prior accidents isn't that meaningful. Because all that's meaningful is that it's the original equipment from the manufacturer, the RCM. It's the same one that came off the line. It was intact at the time of the deployment. Is that the crux of your argument? It's close, Your Honor. But I do believe the RCM is the product itself that is the focus, not the vehicle itself. That's what I'm saying. Out of the fact that this vehicle was belt and suspenders put together, I think the seat was a different color and it had been in accidents. But you're saying that's sort of background noise. What matters is that the RCM is the original piece of equipment and it was intact, had not been tampered with, and that should not have... The fact that it deployed, the airbag deployed with the original brain of the car intact, it's sort of a res ipsa locator situation. This isn't supposed to happen. It's evidence of a manufacturing defect. Yes, Your Honor. Again, I think my question from a minute ago is, what do we make of the fact that the original RCM did not deploy for 14 years? Does that break the connection between the time that it did deploy, unfortunately, for your client and the fact that when it came off the line, it did or did not have a defect? No, Your Honor. I believe that's just in the nature of how the RCM functions. It's not constantly discriminating. When you turn your car on, the RCM isn't constantly discriminating your speed and waiting to deploy. When it's functioning properly, it wakes up when there's a threshold event, a change in the duct. So again, maybe this was the first time in that car's life when it had the opportunity to deploy and it didn't work. Well, correct. But we also know that there were some software failures in the ASICs, the drivers that send the deployment circuit. And I guess I would make an analogy to perhaps a smoke detector. It could be on your ceiling and it looks fine, it's flashing, the battery's good, but you won't know it's defective until there's smoke and it doesn't go off. Yeah, okay. Thank you, Mr. Derrick. We'll hear you on rebuttal. Let's hear from Ms. Barber. Thank you. You may please the court. Katie Barber for Ford Motor Company. When Ms. Coates got into her 2016 accident, she was driving an SUV that barely resembled the one that was first sold in 2002. The SUV had well over 100,000 miles on it. There had been two previous owners, the car had been in at least two earlier accidents, and it had undergone multiple rounds of modification and repairs, including replacing the engine and wiring. Conceded by your friend on the other side. He says the RCM is the original and that hadn't changed. What's your response to that? Two points there, Your Honor. I think, first of all, the RCM is not the whole game. The RCM is part of an interconnected sensing and deployment system, and we know that from Ms. Coates' expert's own testimony. Dr. Caruso explains how the RCM is connected to a front crash sensor. Help us out with that because that was the point of my question to Mr. Derrick. I wasn't sure whether a defective RCM equaled a defective airbag deployment. What's your view on that? I think his answer was no. If the RCM isn't working properly, it wasn't working properly, at least in terms of recording. You concede that. It was supposed to record and it didn't record. So I can see that it is designed to record, but I don't concede that it malfunctioned in a way by not recording. The expert testimony that is unrebutted and undisputed is that sometimes the RCM simply does not record even when there is a properly commanded deployment. This RCM is an early generation model from 2002. Is that a malfunction if it's supposed to record but sometimes doesn't? Is that not a malfunction? I don't think so, Your Honor, because we know that this is inherent in the design and in the model. It's something that happened when these being tested. It's part of the nature of it. So I don't agree that it's a malfunction simply by failing to record. Even if it is some sort of problem with the RCM that it failed to record, it's not the relevant problem. That was my point. Let's assume that the RCM is defective. It was a bad product, manufacturer design defect. When it came off the line, it was made to record. It didn't record. It was a defect here. That thing not recording didn't hurt Ms. Coates. What hurt Ms. Coates was getting hit in the face or body with an airbag. Correct. So help us disaggregate the RCM from the airbag if you can. Well, so the RCM, I don't think you can disaggregate from the airbag, but it's the RCM's recording function as opposed to the RCM's sensing and deployment. Assume for a minute, the recording function is defective. Tell us how the sensing function, et cetera, it does not necessarily follow that because the recording function is effective. The other is also defective. We know that because we have multiple experts testifying to that. So Mr. Raikes, who was testifying on behalf of the RCM manufacturer, said that these are two separate functions and you can have a properly commanded deployment without a recording. Can you give us the record sites for that? I believe we have that at JA-239 is where Mr. Raikes says that. We also have Dr. Toomey saying that at JA-299 and 314. And then Ms. Coates experts, Mr. Kennett and Dr. Caruso agree with that proposition that both recording and deployment are separate functions and that no recording does not equate to improper uncommanded deployment. And that's at JA-849 and 910. And so these are two separate functions and really the lack of recording tells us nothing about whether or why a deployment happened. It's really just a lack of evidence. And I think too, circling back to the point about the RCM being the original RCM, all we know is that the RCM was externally visually inspected from the outside. So they looked at the immediate wiring connected to the RCM and they looked at the exterior of it. They did not open it up and look at the interior. They didn't look for whether there was corrosion, even though I think Mr. Kennett acknowledged that, especially in a tropical climate, you could have corrosion or water damage internally to an RCM that could have happened. We don't know whether that was present. We also don't why there were these historical fault codes. So I think it's wrong to suggest that the recording is the only relevant data we could have had here. Dr. Caruso said the exact opposite. He said there were these historical fault codes that showed that there had been problems in the RCM, but he didn't know what they meant. And he didn't know how long they'd been present. And he thought if he did an internal teardown of the RCM, he could identify what was going on there. Where did he say that? I'm sorry? Where did he say that? Because what you just said seems in stark contrast to what we heard from your friend. I think Mr. Derrick said that Caruso did not concede or say that had he had access to the equipment, he could have figured out whether it was defective. I know we quote him multiple times in our briefing where he says that. I believe also 894 to 95 is another point at which the summary judgment hearing where he talked about how the RCM is connected to the server. And I believe he also talked about there his desire to do an internal teardown of the RCM. And he also spoke about both in his deposition and at the summary judgment hearing about his wish to examine the front crash sensor. So that's another point. The RCM is not the whole game. It's part of this interconnected system. So the way it functions is it receives data from sensors. It has an internal sensor. Again, we don't know the condition of that because the RCM wasn't opened up. And it also has a front crash sensor that's located on the front of the car. That was never examined. And we don't know if there was a problem with that. That could have been another basis of some sort of issue. We just don't know. And of course, we know that the car was in accidents that involved damage to the front of the car and involved modifications to the front of the car. So there's just no evidence either saying we looked at everything in this vehicle that could possibly have contributed to this issue or alleged issue, and we didn't find anything. It could only be the RCM. The RCM is the whole game. A, I think that's incorrect. And B, even if you could say that, you just don't know. The condition is so changed from how this car was first sold in 2002. It just is not the same vehicle. I kept pressing your friend with questions like that about the change that occurs over 14 years and 100,000 miles. And essentially, as I understand it, he said, yeah, but not with respect to the RCM. It's the original thing. Maybe this was the first time, like the smoke detector, when I had the opportunity to deploy. And then it didn't. How do you answer that? I'm not sure where that is in the record, Your Honor. I don't recall seeing expert evidence on that point. I think a main failing of Ms. Coates-Cates here is that she did not have expert evidence explaining how or why an RCM could have had some unspecified defect from 2002 to 2016 and never have manifested in this way until that point. There's simply no explanation of that. So just also the mere fact, even if it is in the record somewhere, that an RCM is only supposed to wake up occasionally, I'm not sure that that answers that question. The issue here, based on Ms. Coates' allegations, are that the RCM woke up when it shouldn't have. So if the RCM is waking up when it shouldn't have, one would think if that were a problem from time of manufacture, it would have manifested sometime in those 14 years. Sorry, I'm sure it's in your brief. I just don't remember. Are we fighting over whether the malfunction theory applies at all here or just over the application of the theory? I think both, Your Honor. So the district court assumed that the malfunction theory did apply and just held that Ms. Coates had not met her burden. You asked to lay down a rule that it doesn't apply when the product is available. Correct. When there are still... You conceded it applies. The whole point of the rule is it should apply when the product isn't available. If the facts and circumstances support what I'm colloquially calling a res ips or rocket or situation, this just doesn't happen, and the product is destroyed or lost, that's when the malfunction theory kicks in. Yes. Yeah. It's like in two-time where the entire product is destroyed. There's nothing to look at. And that's important because we don't want to incentivize your client and others like him to destroy the evidence, right? Right. Yes. I mean, it's easy for them to say, well, we didn't destroy the evidence. We just do this in the normal course of things. Well, now they have a disincentive to not do it in the normal course of things, right? Sure. And then I think the flip side is here, we don't want to incentivize plaintiffs to not fully and reasonably investigate their case. So I think the problem here is that Ms. Coates said, oh, there's no RCM recording. I find that very puzzling. I didn't understand that. Is there any evidence in the record to suggest that Caruso was too expensive or is it sort of an adverse inference that they didn't want Caruso to look because they weren't going to like what he was going to find? Or is there any evidence in the record? There's not evidence in the record on that. My understanding is just that Ms. Coates was initially asking to do this teardown and I think wanted Ford to run it. And Ford said, it's not really, we'll participate, but that's your job. And Ms. Coates just dropped it and didn't pursue it. So it really just was, I think that they thought the lack of recording in the RCM was sufficient for them when their own experts said otherwise. How strong was Caruso's statement that he wanted to see it? Was it milk toast that, well, I could have looked at it or was it more, I would have been up for the look at it. I think it was more the latter. I think he said that he suggested that he look at it and that it would have helped him identify, especially what the historic ACIC codes meant. And recall that those ACIC codes were a fundamental part of his opinion. He said that his opinion that Ms. Coates, that her allegations were correct, was founded on the lack of recording, the presence of historical fault codes and her testimony. And yet he didn't know what those fault codes even meant. And he said the only way to know was open up the RCM and that just didn't happen. So I really think you just have here a failure to fully investigate the case. And so we don't even get past this threshold issue of whether the malfunction theory should apply because this is not the case for it. But the court doesn't have to affirm on that basis. It can affirm on the basis that the district court ruled on, which is even assuming that the malfunction theory applies, she just doesn't make out her case. Malfunction theory only affects one part of a strict product liability claim. So it allows for inferring the existence of a defect at the time of the accident. But it doesn't lessen her burden of proof on the other elements of her claim, including the requirement to prove a defect at time of sale. And it doesn't alter the Rule 56 standards. She still has to meet her burden on those points. And she simply did not hear anything. Why isn't that a jury question? Why couldn't plaintiff's counsel go to the jury and say, look, we know 14 years is a long time. We know 100,000 miles is a lot of miles. But what really matters here is that this RCM, the brain of the car, is intact and it's original. Because they would need expert evidence saying that, which they don't have. They would need expert evidence saying that the RCM being intact and original means that there couldn't have been a defect introduced in the 14 years of the car's use. That there couldn't have been a defect introduced through all of these modifications, these repairs, these accidents. But that's also true for a car that's only been in a week in existence, right? I mean, something could have happened during the week after it came off the lot. But I think the case law reflects that the timing really matters and the history of the car really matters. And it is- It certainly matters in terms of proof and credibility. I think it matters in terms of- If it's a week, it's a really strong case for the jury. And if it's 14 years, it's really strong for the jury if the airbag deploys spontaneously a week after the car is bought. And it's a really weak case if the airbag deploys spontaneously 14 years after the car is bought. But either way, why isn't it for the fact finder? Because I think the further you get away from the time of sale and the more facts you have, like you have here in this record- I mean, this record is just replete with- It's not just the age of the car. It is all these other things that happened to the vehicle. It's also just the unknowns of what happened to the vehicle. For instance, we know that the front seat was replaced, but Ms. Coates can't- And we know that it happened while Ms. Coates owned the car, but she can't explain to us why or when that happened or what else might have happened to the vehicle at that time. I think on this record, you just have- It would be complete speculation and conjecture for a jury to say, despite all of this, we think there was a defect at time of sale. The case law reflects that in this scenario, you need to have expert evidence that explains, number one, why the RCM could have functioned this long without a previous similar problem. And second, why all of these other things that happened to the vehicle could not have introduced the problem at some point along the way. Does that presuppose the malfunction theory doesn't apply? Because the malfunction theory applies, what's an expert going to say? I haven't seen it. I haven't looked at it. I don't know what it did or what it says. All I can tell you is this isn't supposed to happen. Again, I think that's confusing the two elements, a couple elements of a strict product liability claim. The malfunction theory, again, only goes to, is there a defect? You can infer from just the fact that a malfunction occurred and eliminating other potential causes that there was a defect just based on that. Again, a defect at the time of the accident. I think what we're talking about here is defect at time of sale. The malfunction theory doesn't change the burden on that. If anything, it makes it harder for a plaintiff to prove defect at time of sale because it's going to be based on inference and circumstantial evidence a lot of times. And so the circumstantial, that inference of defect at time of sale is going to be more and more difficult to draw. The further away you get from time of sale, the more you have all these things that have happened to a vehicle that could have introduced the defect. And so it's that other element of her claim that I think the malfunction theory doesn't even really speak to on which she still carries her burden of proof. And she just didn't create a genuine dispute on that issue at summary judgment. So I'd ask that the court affirm. All right. Thank you. Let's hear. Mr. Derrick, would you mind starting, sir, with answering this question? If we hold as a matter of law that the malfunction theory does not apply when the product is available for inspection, are you on a court? I'm sorry, your honor. Am I what? Out of court. Do you lose? Do you lose? Yes, your honor. Okay. Yes. Plaintiff is proceeding under the malfunction theory and is relying on that theory as a result of not having the evidence, the recording available to her. As Mr. Caruso testified, that evidence is the crucial evidence here that would allow both parties to determine when and how the deployment occurred. And if I could go back to a point made by sister counsel, I believe it was with respect to the RCM deploying and not recording. The only circumstance, and this is agreed upon by everybody for the RCM to deploy and not record is if there is a power failure. Mr. Sargent testified to that. That's at JA164. Mr. Rakes testified to that. That's at JA239. Mr. Kennett testified to that. That's at JA269. And Mr. Caruso also explained that. That's at JA331. Does the record indicate whether there was or was not a power failure? There was no evidence of a power failure to the RCM. There was a joint inspection that confirmed continuity in the circuitry of the restraint system. There's no evidence whatsoever that Ford has put forward other than merely speculating that there could be a power failure somehow. But there's no evidence whatsoever of a power failure. Mr. Clark, chief engineer for Ford, was provided the field report and testified, and it's in my brief, that the algorithm did not make a decision to deploy when he analyzed the report. It did not command deployment. And that is, and perhaps I'm repeating myself, but it's a simple syllogism. Ford required a recording for every deployment. That's the first premise. The second premise is that here we have a deployment of the airbag, and there's no crash record that existed. The conclusion is that the RCM is not functioning properly, and plaintiff is entitled to the inference that it was not properly functioning in its deployment function as well. Okay. I might agree with that in 2016 when this accident occurred. How do you get the inference back to 2002? I mean, all kinds of, aside from wrecks and other errors and changed car seats and everything, just wires corrode. Leads come apart. Things happen. How do we know that the defect wasn't, was present until 2002? Because the RCM was inspected. It was a joint inspection. Dr. Toomey, Ford's expert, in his report that JA-288 states that the RCM is in good condition based on service life and no dirt, moisture, corrosion, rust, oxidation. Mr. Kenna agreed with that. He was at the inspection as well. That's at JA-271. If it was inspected, what was not inspected? It was not opened up. It remained in its sealed condition as it had when it left the manufacturer, when it left Ford in 2002. This is the same RCM. Nothing's been changed. So how do you know there was not corrosion on the inside? It's sealed. There's no corrosion on the outside. I would imagine if there's corrosion on the inside, the casing that's more directly exposed to the elements would show corrosion as well. Isn't it possible that on the inside, if you open it up, there would be evidence as to why the recorder was effective? This is software. It's not hardware. It's the software that is, these are- You can't inspect this. There's nothing to inspect inside. I don't think it's going to show you anything. You're not going to- I don't know. We won't know because it wasn't opened up, right? Well, opening it up won't provide the software or won't provide the data. It's the software. It's an algorithm that determines whether this should deploy and record. I don't know the answer to this question, but doesn't software code degrade over time too? Quite frankly, Your Honor, neither do I, but one would expect that if the RCM is in good condition based on its service life, as Dr. Toomey had stated, that the software would be the same. And I think that's the expectation of the driver who's on the road and at least hundreds of thousands of cars that are this age or older. All right. And just to make sure I understand your argument, we know for a fact that the RCM did not record the event, correct? Correct. Okay. And it's your argument that- And let's assume that that failure to record was a defect that existed in the product when it came off the line in 2002. Okay. Okay. It's your argument that that defect in the failure to record ipso facto proves there was also a defect with respect to the airbag. With respect to deployment? Deployment of the airbag. Your argument is based on the premise that the RCM's recording function is so inextricably intertwined with the deployment of the airbag that you can't have one without the other. Correct, Your Honor. And it's consistent with Ms. Coates' statement at the scene to Officer Leibov. To imagine that somebody would fabricate that story, that an airbag just deployed spontaneously is one thing, but to do it in such a short period of time, have the same deposition testimony, not have a recording that was required on this deployment, and to rule out reasonable alternatives, I think really importantly, there's no evidence that she was driving negligently, for it has not put forth any of that evidence. And that is their position. She crashed and then it deployed. Plaintiff has put forth substantial evidence supporting her spontaneous deployment position, at least enough so that the court can't conclude that no reasonable jury could find for plaintiff. And we would ask that the summary judgment be reversed. All right. Thank you very much, Mr. Derrick. Thank you, Ms. Barber. The court will take the matter under advisement. Thank you.